269 So.2d 542 (1972)
James NELLON, Jr.
v.
Robert M. HARKINS, etc., et al.
No. 9069.
Court of Appeal of Louisiana, First Circuit.
November 13, 1972.
Roy Maughan, Baton Rouge, for appellant.
William H. Cooper, Jr. (Franklin, Moore, Beychok & Cooper), Baton Rouge, for appellees.
Before LANDRY, TUCKER and CUTRER, JJ.
CUTRER, Judge, ad hoc.
From an adverse judgment denying him workmen's compensation for total and permanent disability, plaintiff perfected an appeal to this court. We affirm.
The facts of the case are as follows. The plaintiff, James Nellon, Jr., was employed as a delivery man and general handyman for Bob Harkins Florist. On February 3, 1971, while on a lunch break in his employer's truck, his foot became entangled in the accelerator as he was pulling away from a grocery store, causing him to lose control of the truck and strike an unoccupied parked car. The plaintiff immediately reported the accident to the city police who made an investigation.
It is this accident and the injuries which allegedly arose therefrom which are the subject of the controversy here.
The police officer who investigated the accident testified that the plaintiff told him that he was not injured. Plaintiff admits this is true, and the trial judge so found this to be the fact.
The plaintiff did not seek medical aid until March 23, 1971, some 49 days after the accident. At that time the plaintiff, on his own volition, went to see a Dr. James E. Williams, a general practitioner. Dr. Williams testified that plaintiff complained to him of back trouble, giving a history of having had this problem off and on for the previous year. When asked if he had been informed that plaintiff had been involved in an automobile accident this physician stated quite definitely that the plaintiff had made no mention of any accident.
Dr. Williams, when questioned as to his custom and method of taking a patient's history, testified that he wrote the patient's medical history as the patient related it to *543 him. When questioned by the court on this subject the doctor was emphatic about this and we quote:
"Q Let me ask you this: Do you write your comments at the time you talk to the patient?
A Yes, sir.
Q At the time you are talking to your patients?
A Yes, sir.
Q In other words this history is written by you at the time the patient narrates and describes what his problem is.
A Yes, sir, the record is complete before he leaves the examining room." (Tr. 62)
Dr. Williams saw plaintiff three times. He stated that he saw him on March 23 and 30, 1971, but the testimony is not clear as to the last time he saw plaintiff (Tr. 60), but we deem the date as unimportant. Dr. Williams had X-rays made, but could not make any specific diagnosis. His testimony was that the X-rays were normal. He gave plaintiff some muscle relaxants and medication for pain.
The testimony of Dr. Williams was the only medical testimony offered in this case by either side. By agreement of counsel, plaintiff did introduce the medical reports of four other doctors. These are summarized as follows.
On April 23, 1971, plaintiff was seen by a Dr. U. S. Hargrove, a urologist. When questioned about this visit, plaintiff testified that he consulted Dr. Hargrove because his office was immediately behind the florist shop, and because he thought his trouble might be his kidneys. Plaintiff did not give Dr. Hargrove any history of an automobile accident. We quote from Dr. Hargrove's report:
"He did not relate any specific incident as initiating the trouble."
Dr. Hargrove diagnosed plaintiff's trouble as orthopedic and prescribed muscle relaxants and pain relievers.
The plaintiff next saw a Dr. J. Willard Dowell, an orthopedic surgeon, on April 30, 1971, on a referral from Dr. Hargrove. The plaintiff did give Dr. Dowell a history as having been involved in an automobile accident, however, Dr. Dowell commented in his report that, "He (the plaintiff) gives a rather poor history but says that he didn't see a doctor until March."
Dr. Dowell's findings were as follows:
"This patient actually showed little objective evidence of disability. He may have some residual muscle soreness, but I don't feel that he needs any specific orthopedic treatment."
The plaintiff was next seen by a Dr. Alan C. Farries, an orthopedic specialist. Dr. Farries report gives a history of the plaintiff's having been involved in an automobile accident. His medical findings were essentially the same as Dr. Dowell's.
The plaintiff was last seen by Dr. William L. Fisher, Jr., who on June 3, 1971, operated on plaintiff for what was diagnosed as a protruded lumbar intervertebral disc. There is no mention of any accident in Dr. Fisher's report.
The trial court found that as a result of this operation and complications arising therefrom the plaintiff is today incapacitated to perform any significant manual labor.
Two main issues were presented in the court below, namely, did the accident occur during the course of and in the scope of plaintiff's employment, and if so is it related to plaintiff's present medical difficulties.
The trial court held that the accident did occur during the course and scope of the plaintiff's employment under the exception to the "lunch break" rule enunciated in Smith v. Orleans Management Corporation, 242 So.2d 288 (La.App. 4th Cir. 1970).
*544 Since the defendants have neither appealed nor answered the appeal that portion of the trial court's judgment holding that the accident occurred during the course and scope of the plaintiff's employment must stand. LSA-C.C.P. Articles 2082 and 2133. Stevens v. Stevens, 206 So.2d 558 (La.App. 1st Cir. 1968); Pierece v. Hartford Accident & Indemnity Company, 184 So.2d 241 (La.App. 1st Cir. 1966).
The trial court next held that the plaintiff had not proved that the accident was related to his present disability, and we agree.
While the court is mindful of the fact that in compensation cases the claimant is not, and should not be, held to strict proof of his claim nevertheless, the basic requirement is that he must prove his case by a preponderance of the evidence, and enough evidence must be introduced to show that more probably than not the injury was caused by the accident or employment in question. Bryant v. Slidell Memorial Hospital, 243 So.2d 285 (La.App. 1st Cir. 1970).
The record amply supports our findings that the plaintiff made no complaint to the investigating officer that he was hurt, that he did not seek medical aid until some 49 days after the accident and that he had made no complaints at any time to his employer or fellow employees as having received any injuries as a result of this accident, although there is some testimony that he complained on one occasion to his employer and on one occasion to a fellow employee that he was having some back trouble, but in no way did he relate this to the accident.
While it is true back injuries do not always immediately manifest themselves, we feel, as did the trial judge, that the time lapse in this case is excessive. We have studied carefully all of the cases cited by the appellant on this point, but we find that all of these cases are easily distinguished from the case at bar.
We are impressed with the fact that plaintiff did not give either Dr. Williams or Dr. Hargrove, the first two doctors he saw, any history involving this accident.
Under these circumstances we find that the trial judge did not commit manifest error when he held that the plaintiff had failed to prove his case.
For the reasons assigned the judgment of the trial court is hereby affirmed and the plaintiff-appellant is ordered to pay the costs of this appeal.
Affirmed.